Karen BERNARDI, et al., Plaintiffs,

v.

APPLE VACATIONS, et al., Defendants.

No. CIV.A.02–6664.

United States District Court, E.D. Pennsylvania.

Nov. 19, 2002.

James C. Shah, Shepherd, Finkelman, Miller & Shah, LLC, Media, PA, Marc L. Ackerman, Scott & Scott, LLC, Bala Cynwyd, PA, for plaintiffs.

Andrew J. Marchese, Gregory P. Sreenan, Sreenan & Assoc., PA, Miami, FL, Joan Devlin Daly, Kelly Grimes Pietrangelo & Vakil, PC, Media, PA, Laura W. Hays, Malone, Larchuk & Middleton, P.C., Wexford, PA, for defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

This is an action against Lineas Aereas Allegro S.A. de C.V. ("Allegro"), a foreign airline, by the passengers on a flight from Cancun, Mexico to Newark, New Jersey, based on the allegedly extreme and inhumane conditions suffered by the passengers during the flight. The complaint alleges violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), Pa. Stat. Ann. tit. 73, § 201–1 *et seq.*, misrepresentation, unjust enrichment, intentional infliction of emotional distress, false imprisonment, and negligence under Pennsylvania law, and sundry violations of the Mexican Civil Code.

The case was initially filed in the Court of Common Pleas of Delaware County, and was timely removed to this court. Jurisdiction for removal was predicated on the presence of a federal question based upon the provisions of the Warsaw Convention. The Warsaw Convention, *inter alia,* establishes a system for regulating the liability of a carrier for personal injuries suffered by passengers in international flights. The United States is a signatory of the Convention.

Plaintiffs have moved to remand the case to state court. Defendant opposes the remand, and has moved to dismiss plaintiffs' complaint. The issue before the court is whether the Warsaw Convention preempts the state law claims based upon "wilful misconduct." Plaintiffs contend that, because the complaint alleges primarily wilful misconduct (not just negligence) on the part of the airline,[1] the Warsaw Convention is not implicated. Thus, there is no federal question jurisdiction and the case should be remanded. Defendants counter that the preemptive effect of the Warsaw Convention is plenary and that it

---

1. There are two defendants in this case. One is the carrier and the other is the tour operator. Both have moved to dismiss for lack of subject matter jurisdiction. Since there is a threshold question of whether a tour operator that charters a flight on an airline is a "carrier" subject to federal question jurisdiction under the Warsaw Convention, the court will allow discovery to proceed on the issue of subject matter jurisdiction before proceeding on the tour operator's motion to dismiss, although that motion is based on the same argument advanced by the carrier in this case.

reaches not only the state law tort claims based on negligence, but also those state law claims based on alleged wilful misconduct. Thus, plaintiffs' claims should be dismissed.

For the reasons that follow, the court concludes that the Warsaw Convention preempts all of plaintiffs' state law claims, including those based on wilful misconduct. Accordingly, the court will dismiss for lack of subject matter jurisdiction plaintiffs' claims based on violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and on violations of the Mexican Civil Code. The court also will dismiss plaintiffs' state law claims of misrepresentation, unjust enrichment, intentional infliction of emotional distress, false imprisonment, and negligence with leave to amend their complaint to state causes of action, if appropriate, under the Warsaw Convention.

## II. DISCUSSION

### A. Applicable Law

■ The Warsaw Convention[2] applies to "all international transportation of persons, baggage, or goods performed by any aircraft for hire." Note following 49 U.S.C. § 40105. The Convention sets forth a comprehensive scheme that defines the liability of international air carriers for personal injuries, damage and loss of baggage and goods, and damage caused by delay. Recognizing "the advantage of regulating in a uniform manner the conditions of . . . the liability of the carrier," *id.*, one

of the Convention's overarching purposes is "to accommodate or balance the interests of passengers seeking recovery for personal injuries, and the interests of [international] air carriers seeking to limit potential liability." *El Al Israel Airlines, Inc. v. Tseng*, 525 U.S. 155, 170, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999).

■ The Supreme Court has concluded that, "[g]iven the Convention's comprehensive scheme of liability rules and its textual emphasis on uniformity, [the Court] would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations." *Id.* at 169, 119 S.Ct. 662. Consequently, "recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking and disembarking,' . . . if not allowed under the [Warsaw] Convention, is not available at all." *Id.* at 161, 119 S.Ct. 662.

■ Article 17 of the Convention establishes carrier liability for "damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage took place on board the aircraft or in the course of any of the operations of embarking and disembarking." Note following 49 U.S.C. § 40105. Under the 1966 modifications to the Convention worked by the Montreal Interim Agreement, a private accord among international air carriers with connecting points in the United States,[3] this

---

**2.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1936) *reprinted in* note following 49 U.S.C. § 40105.

**3.** Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, Agreement CAB 18900, approved by order E–23680, 13 May 1966 (docket 17325),

*reprinted in* Lawrence B. Goldhirsch, The Warsaw Convention Annotated: A Legal Handbook 367 (2000) [hereinafter Montreal Agreement]. Although the Montreal Agreement is not a treaty, it "requires compliance from all signatories when their flight itinerary includes a stop in the United States." *Carey v. United Airlines*, 255 F.3d 1044, 1047 n. 9 (9th Cir.2001). Moreover, the Montreal

provision "subjects international carriers to strict liability for Article 17 injuries sustained on flights connected with the United States." *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 552, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); *see also In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267, 1286 (2d Cir.1991) (overruled on other grounds by *Zicherman v. Korean Air Lines Co., Ltd.,* 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996), as recognized in *Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1029 (2d Cir.1996)) ("The framers ... saw Article 17 as a means of creating liability or at the very least shifting the burden of proof to the carrier.").

While under the Warsaw Convention, strict liability for personal injury is the rule, the impact of the rule is cushioned by correspondingly limiting the damages that may be awarded to $75,000 per passenger.[4] The limitation on damages is not applicable, however, where damages are caused by a carrier's "wilful misconduct." Note following 49 U.S.C. § 40105.

## B. The Preemptive Effect of the Warsaw Convention

■ As a general rule, state law claims "are barred by the Warsaw Convention, because the Convention provides the exclusive cause of action for injuries suffered during international flights." *Waters v. Port Auth. of N.Y. and NJ,* 158 F.Supp.2d 415, 422 (D.N.J.2001) (citing *Tseng,* 525

U.S. at 161, 119 S.Ct. 662). Accordingly, once a court determines that the action is one for personal injury within the scope of the Warsaw Convention, it must dismiss all state law claims as preempted, and allow a plaintiff to proceed in the federal forum, and only on claims cognizable under the Convention.

■ The plaintiffs claim that Article 25, as clarified by the Montreal Protocol, informs that the Warsaw Convention as a whole does not apply to common law claims of wilful misconduct, and that therefore, those claims predicated on wilful misconduct are "expressly relegated" to state law. *Weiss v. American Airlines, Inc.,* 147 F.Supp.2d 950, 953 (N.D.Ill.2001). The court disagrees.

■ First, the plain reading of Article 25 suggests a different result. Article 25, in relevant part, states

The carrier shall not be entitled to avail himself of the provisions of this convention *which exclude or limit his liability,* if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

Note following 49 U.S.C. § 40105 (emphasis supplied). On its face, this provision teaches that "[wilful] misconduct negates ... the monetary limitations contained in

Agreement has been adopted by the United States. *See* Order E–23680, 31 Fed.Reg. 7302 (1966).

**4.** The 1966 Montreal Agreement raised the original cap on damages in Article 22 from approximately $8,300 to $75,000. *See* Montreal Agreement, *reprinted in* Goldhirsch, *supra* note 3, at 367. The Montreal Agreement also worked significant changes in carrier liability. The Warsaw Convention originally protected carriers from liability under the "due care exclusion" in Article 20, which provided a

complete defense to liability for damage only "if [the carrier] proves that ... [it has] taken all necessary measures to avoid the damage or that it was impossible ... to take such measures." Note following 49 U.S.C. § 40105. In signing the 1966 Montreal Agreement, however, carriers to points within the United States agreed to waive this "all necessary measures" defense. *See* Montreal Agreement, *reprinted in* Goldhirsch, *supra* note 3, at 367.

Article 22 ... [N]o authority suggests that the basic liability terms ... were to be displaced." *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1488–89 (D.C.Cir.1991).[5]

Second, the idea that wilful misconduct claims are indeed within the ambit of the Warsaw Convention is consistent with the jurisprudence of the Supreme Court in this area. *See Carey v. United Airlines*, 255 F.3d 1044, 1048–50 (9th Cir.2001) (discussing in detail Supreme Court precedent and the purposes of the Warsaw Convention). Specifically, in construing Article 17, the provision that sets forth the general conditions that trigger Warsaw Convention protections, the Supreme Court broadly defined "accident" as any "unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). At no time has the Supreme Court limited the broad definition of the term "accident" only to events that involve reckless or negligent conduct, or otherwise carved out wilful misconduct from the scope of the Convention.

 Third, the key purpose of the Warsaw Convention, set forth in its preamble, is that of "achiev[ing] uniformity of rules governing claims arising from international air transportation." *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (quoting *Floyd*, 499 U.S. at 552, 111 S.Ct. 1489 (1991)). In this context, any scenario that would force international air carriers to face liability in two forums, namely a federal court for negligence claims and a local court for wilful misconduct claims, would undermine the Convention's stated goal of uniformity. *See Carey*, 255 F.3d at 1049. Moreover, such an approach would "encourage artful pleading by plaintiffs seeking to opt out of the Convention's liability scheme when local law promise[s] recovery in excess of that prescribed by the treaty." *Tseng*, 525 U.S. at 171, 119 S.Ct. 662.[6] Had the delegates intended the wholesale relegation of wilful misconduct claims to state law, a radical step that would seriously undermine the universality of the Convention, it could be expected that they would have said so in broader and more explicit terms.

 Fourth, *Weiss* misreads the extent to which the Montreal Protocol amended Article 25.[7] The adoption of the Montreal

---

**5.** The language of Article 25 is the same as that used in the other three Articles that give claimants the ability to recover damages beyond the limitations set forth in Article 22, to wit: 3(2) (passenger tickets), 4(4) (baggage tickets), and 9 (Air Waybills). Goldhirsch, *supra* note 3, at 151. "In those three Articles, as well as in Article 25, the carrier is penalized for its misconduct." *Id.*

**6.** Although, as described above, wilful misconduct claims are not subject to the Warsaw Convention's $75,000 cap on damages or its due care exclusion, the Warsaw Convention still affords significant protection for carriers, because the treaty bars punitive damages awards otherwise available under state law. *Carey*, 255 F.3d at 1050; *In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267, 1270 (2d Cir.1991) (overruled on other grounds by

*Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996), as recognized in *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1029 (2d Cir.1996)) ("[T]he Convention does not permit the sort of punitive damages available under federal law to be awarded, even when the liability limitations are lifted under Article 25 in cases of willful misconduct."). Presumably, punitive damage recovery would be available for wilful misconduct under state law.

**7.** Montreal Protocol No. 4, ratified by the Senate in 1998, changed the existing language of Article 25 by stating that "the limits of liability specified in Article 22 shall not apply if it is proved that the damage resulted from an act or omission of the carrier, done with intent to cause damage or recklessly and with knowledge that damage would probably

Protocol did not bring about a sea change in practice by permitting claims for wilful misconduct to be brought in a state forum, but merely "clarifie[d] what [A]rticle 25 meant by 'wilful misconduct.'" *Bayer Corp. v. British Airways, LLC,* 210 F.3d 236, 238 (4th Cir.2000). As the Second Circuit explained:

> Article 25 of the Warsaw Convention defers to the law of the forum jurisdiction for a determination of what conduct constitutes "wilful misconduct" by an air carrier. When a Warsaw Convention action is filed in a United States district court and no federal statute governs, the law of the United States for purposes of Article 25 is the law of the state in which the district court sits.

*Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1030 (2d Cir.1996). In other words, the language of Article 25 only prescribes that whether the conduct alleged constitutes wilful misconduct is to be determined by reference to local (state) law, Goldhirsch, *supra* note 3, at 155, and not, as the *Weiss* court concluded, that wilful misconduct claims are to be adjudicated outside the framework of the Warsaw Convention and in a local forum.[8]

### C. Plaintiffs' Claims

 Applying the aforesaid principles to this case, plaintiffs' claims of wilful misconduct based on violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and on violations of the Mexican Civil Code will be dismissed for lack of subject matter jurisdiction. The court will also dismiss plaintiffs' state law claims of misrepresentation, unjust enrichment, intentional infliction of emotional distress, false imprisonment, and negligence with leave to amend.

Because the state law claims are preempted does not mean, of course, that plaintiffs may not recover for wilful misconduct under the Warsaw Convention. Thus, to the extent that the Warsaw Convention recognizes liability for the type of tortious conduct alleged by plaintiffs in their complaint, leave to amend is granted to state such claims.[9] *See* Fed R. Civ. P. 15(a).

### III. CONCLUSION

For the foregoing reasons, the court will dismiss plaintiffs' claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and under the Mexican Civil Code for lack of subject

---

result." Additional Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929, as Amended by the Protocol Done at the Hague on 28 September 1955, *reprinted in* Goldhirsch, *supra* note 3, at 401.

**8.** The Federal Tort Claims Act ("FTCA") provides a useful analog of a federal statutory scheme which borrows local law to inform the rule of decision to be applied in an individual case. Under the FTCA, a claim for damages against an agent or employee of the United States Government based on personal injury must be litigated in a federal forum. 28 U.S.C. § 1346. However, liability is to be determined in accordance with local law, *id.*,

but, regardless of local law, the claimant is entitled to neither a jury trial, 28 U.S.C. § 2402, nor to punitive damages. 28 U.S.C. § 2674.

**9.** Allegro argues that plaintiffs can allege no set of facts that would place them in the purview of the Warsaw Convention, because they did not suffer "death or wounding ... or any other bodily injury" as required under Article 17. *See* note following 49 U.S.C. § 40105. In addition, Allegro argues that plaintiffs may not recover attorney's fees under the Warsaw Convention. The court need not visit either of these arguments until such time as the plaintiffs have amended their complaint to state a claim under the Warsaw Convention.

matter jurisdiction. The court also will dismiss plaintiffs' remaining state law claims for misrepresentation, unjust enrichment, intentional infliction of emotional distress, false imprisonment, and negligence, but will grant plaintiffs leave to amend their complaint to state a cause of action under the provisions of the Warsaw Convention.

An appropriate order follows.

### ORDER

**AND NOW,** this 19th day of **November, 2002,** upon consideration of defendants' notice of removal (doc. no. 1), plaintiffs' motion to remand to state court and memorandum of law in support of plaintiffs' motion to remand to state court (doc. no. 5), plaintiffs' memorandum of law in opposition to defendants' motion to dismiss (doc. no. 6), defendant Allegro Airlines' motion to dismiss plaintiffs' complaint and motion to strike plaintiffs' demand for attorneys' fees, costs and punitive damages (doc. no. 7), defendants' opposition to plaintiffs' motion to remand to state court (doc. no. 14), plaintiffs' memorandum of law in opposition to motion to dismiss (doc. no. 15), and defendant Allegro's response to plaintiffs' opposition to defendant's motion to dismiss complaint (doc. no. 18), it is hereby **ORDERED** as follows:

1. Plaintiffs' motion to remand to state court (doc. no. 5) is **DENIED**.

2. Defendant Allegro's motion to dismiss plaintiffs' complaint is **GRANTED**.

---

**1.** The plaintiffs contend that defendant Apple Vacations, as a travel agent, is not a "carrier" as contemplated by the terms of Article 17 of the Warsaw Convention, and that the court therefore lacks subject matter jurisdiction over the claims plead against Apple in state law. Plaintiffs shall be permitted to take discovery only on the subject of the relationship of Apple Vacations and Allegro Airlines in

3. Pursuant to Federal Rule of Civil Procedure 15(a), plaintiffs are granted leave to amend the complaint to state a cause of action under the Warsaw Convention by **November 29, 2002.**

4. Plaintiffs' request for discovery and supplemental briefing is **GRANTED.**[1]

 A. Plaintiffs shall complete all discovery by **December 17, 2002.**

 B. Plaintiffs shall file a supplemental brief with supporting affidavits or citations to deposition transcripts by **January 2, 2003.**

 C. Defendant Apple shall file a responding brief with supporting affidavits or citations to deposition transcripts by **January 17, 2003.**

**AND IT IS SO ORDERED.**

---

order to determine whether Apple is a "carrier." *See In re Air Crash Disaster Near Peggy's Cove, Nova Scotia on Sept. 2, 1998,* No. MDL 1269, 2002 WL 334389, at *4–*5 (E.D.Pa. Feb.27, 2002) (discussing *Reed v. Wiser,* 555 F.2d 1079, 1083 (2d Cir.1977) and its progeny). Plaintiffs shall complete all discovery on this single issue by December 17, 2002.